| | |
|---|---|
| STEVE FORD<br>8011 Cameryn Pl.<br>Pasadena, MD 21122, *individually and on behalf of all others similarly situated*,<br><br>       Plaintiff,<br><br>v.<br><br>GENESIS FINANCIAL SOLUTIONS, INC.<br>14600 NW Greenbrier Pkwy<br>Beaverton, OR 97006<br>**Agent for Service of Process:**<br>C T CORPORATION SYSTEM<br>780 Commercial St SE Ste 100<br>Salem, OR 97301<br><br>and<br><br>SPRING OAKS CAPITAL SPV, LLC<br>1400 Crossways Blvd, Ste. 100b<br>Chesapeake VA 23320<br>**Agent for Service of Process:**<br>Csc-Lawyers Incorporating Service Company<br>7 St. Paul Street, Suite 820<br>Baltimore MD 21202<br><br>       Defendants. | IN THE CIRCUIT COURT FOR<br>MONTGOMERY COUNTY<br><br><br><br><br>Case No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.       Plaintiff, Steve Ford, brings this action to challenge abusive and unlawful high-interest consumer loan origination and collection practices which Defendants perpetrated against him and a proposed Class of similarly situated consumers (the "Class") defined below.

2.       Defendant Genesis Financial Solutions, Inc. ("Genesis") is a predatory high-interest small-loan lender, which originates credit by marketing, making, servicing, and collecting on consumer credit card loans in violation of the law.

3. Genesis does not have a bank charter, so – unlike banks – it is subject to state usury laws which limit the amount of interest and fees that can be collected on loans. In an attempt to work-around these legal restrictions, Genesis has employed a "rent-a-bank" scheme under which Genesis markets for, underwrites, originates, and collects on loans and has hired a bank to "issue" those loans – branded as loans from Genesis – in the bank's name.

4. But Genesis' attempted "work around" to avoid usury law places Genesis in the role of a loan broker - assisting consumers like Plaintiff to obtain loans issued by third-party banks. But Genesis does not have the licenses required under Maryland law to either act as a loan broker or make loans.

5. Maryland requires Genesis and other loan brokers to be licensed. Genesis attempted to evade Maryland law by arranging for a third-party financial institution to issue the loan accounts for Plaintiff and others, even though Genesis marketed the loan accounts, underwrote the loan accounts, collected all payments on the loan accounts, and always bore all of the risk of the credit transactions – but Maryland's Legislature and Supreme Court have seen through and prohibited such schemes.

6. Despite the fact that Genesis is a loan broker, it provided its loan-brokering services to Plaintiff and many other Maryland residents when it is not licensed by Maryland to act as a loan broker. But Maryland's Credit Services Businesses Act ("MCSBA") requires a license before brokering loans to any Maryland residents. *See* Md. Code Ann., Com. Law § 14-1093(a).

7. It is no secret that Maryland law requires persons who arrange and collect on loans, like Genesis, to be licensed. First, the plain text of the MCSBA requires it. *See* MCSBA § 14-1901(e)(1)(ii).

8. And, the Maryland Supreme Court has confirmed that the MCSBA applies to loan brokers like Genesis. *See CashCall, Inc. v. Maryland Com'r of Fin. Regulation*, 448 Md. 412, 439 (2016) ("*CashCall*"). *CashCall* addressed a lending setup virtually identical to Genesis' and explained why Maryland law required a loan broker like Genesis to be licensed. *CashCall* also held that a person arranging and then collecting on loans, like Genesis has done here, is the *de facto* lender in the transaction.

9. The MCSBA regulates all "credit services businesses" who, like Genesis, are paid for arranging extensions of credit by others. *See* MCSBA § 14-1901; *see also CashCall.* In Plaintiff and Class Members' transactions, Genesis, with respect to an extension of credit by a third-party financial institution, provided, performed, or represented that it could or would sell, provide, or perform, the service of obtaining an extension of credit for the consumer Plaintiff and Class Members.

10. Genesis offered or agreed to sell, provide, or perform services to Plaintiff and Class Members, who are all residents of this State. In addition, Genesis makes written solicitations or communications that are received in Maryland, by Maryland residents. Accordingly, the MCSBA requires Genesis, like all credit services businesses providing services to Marylanders, to be licensed. *See* MCSBA § 14-1903.

11. Genesis does not have the license prescribed by, and required by, the MCSBA.

12. Because Genesis arranged loans for Plaintiff and Class Members without a license, under purported contracts with Plaintiff and Class Members which did not contain the disclosures and terms required by the MCSBA, the contracts are void and unenforceable as contrary to the public policy of Maryland. *See, e.g.*, MCSBA § 14-1907.

3

13.     Because Genesis is, under *CashCall*, acting not only as broker, but also as *de facto* lender, the MCSBA is not the only Maryland statute regulating Genesis' transactions with Plaintiff and Class members. As a lender, Genesis must be licensed under the Maryland Consumer Loan Law, Md. Code Ann., Com. Law §§ 12-301 *et seq.* (the "MCLL") – but it is not.

14.     In particular, Genesis received, through contracts with the third-party financial institutions extending the credit to Plaintiff and Class Members, the exclusive right to collect all payments of principal, interest and fees from Plaintiff and Class Members. As a result, Genesis was the *de facto* lender in Plaintiff and Class Members' transactions. *See CashCall*, 448 Md. at 436 (where a credit services business "received, through contracts with the banks, the exclusive right to collect all payments of principal, interest and fees, including the origination fee… [t]his arrangement, in essence, rendered CashCall [the credit services business] the *de facto* lender."). Genesis extended credit to Plaintiff and each Class Member and made the loans to Plaintiff and each Class Member.

15.     The MCLL regulates all loans under $25,000 which do not qualify for the limited exceptions to the application of the statute. *See* MCLL § 12-303. All of Genesis's loans to Plaintiff and Class Members were for less than $25,000 and none of the loans to Plaintiff and Class Members qualify for any of the limited exceptions to the application of the MCLL.

16.     Genesis has made numerous loans to Maryland residents, loans which are regulated by the MCLL, in each of the last three years and for many years prior to that. It is engaged in the business of making loans regulated by the MCLL.

17.     The MCLL prohibits making loans within its auspices without a license. *See* MCLL § 12-314(a) ("A person may not lend $25,000 or less if … [t]he person is not licensed

under or exempt from the licensing requirements under the Maryland Consumer Loan Law--Licensing Provisions.").

18.     Because Genesis made loans subject to the MCLL to Plaintiff and Class Members without a license, those loans are "void and unenforceable." *See* MCLL § 12-314(b) ("A loan made in the amount of $25,000 or less, regardless of whether the loan is or purports to be made under this subtitle, is void and unenforceable if...[a] person who is not licensed under or exempt from the licensing requirements under Title 11, Subtitle 2 of the Financial Institutions Article made the loan.").

19.     And Genesis may not "receive or retain" any amounts from Plaintiff or Class Members in connection with its void and unenforceable loans to them. *See* MCLL § 12-314(b)(2) ("A person may not receive or retain any principal, interest, fees, or other compensation with respect to any loan that is void and unenforceable under this subsection.").

20.     Accordingly, Maryland law prohibits Genesis from collecting any amounts on its loans to Plaintiff and Class Members.

21.     Nevertheless, Genesis unlawfully collected and retained money from Plaintiff and Class Members on their loan accounts, in violation of Maryland law.

22.     Maryland's Legislature has imposed harsh consequences for non-bank lenders – like Genesis – who partner with a bank or other federally insured third-party financial institution in order to avoid state interest-rate caps, but do not comply with other applicable Maryland laws. The Maryland Court of Appeals has characterized similar arrangements as "rent-a-bank" schemes. *See CashCall, Inc. v. Maryland Com'r of Fin. Regul.*, 448 Md. 412, 420, 139 A.3d 990, 995 (2016).

23.    Yet Genesis repeatedly flouted and disregarded applicable Maryland law and arranged and collected on consumer loans from Plaintiff and each Class Member in return for substantial compensation, without a Maryland license, frustrating the protections enacted by the General Assembly, evading regulatory oversight, damaging Plaintiff and Class Members, and obtaining an unfair advantage over its licensed and regulated competitors in the process.

24.    As a result of the facts alleged in this Complaint, Plaintiff and each Class Member are entitled to a declaration that Maryland law requires Genesis to be licensed, that the contracts for Genesis's services are void and unenforceable, that the Plaintiff and Class Members' Genesis loan accounts are void and unenforceable, and that Genesis was never entitled to collect any amounts from Class Representative and Class Members, under Maryland's Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. §§ 3-401 et seq.

25.    In addition, Genesis must return all payments made to it by Plaintiff and Class Members within the past twelve years, under the MCLL.

26.    Because Defendants' activities were form-driven and violate the law in materially uniform ways in the transactions of the Plaintiff and the numerous others, this lawsuit is well-suited for class action treatment.

27.    Accordingly, Plaintiff requests certification of the following Class:

All Maryland residents who Genesis assisted to obtain consumer loans in the amount of $25,000 or less, where the loan application originated in Maryland and where Genesis received, through agreements with a third-party financial institution, the exclusive right to collect all payments of principal, interest and fees on the loan.

Excluded from the Class are all persons whose claims are barred by the applicable statute of limitations, all employees or representatives of Defendants, and all Court personnel.

28.     Defendant Spring Oaks Capital, LLC ("Spring Oaks") purchased the unenforceable Genesis accounts of Plaintiff and other Class members and is pursuing collection of those unenforceable accounts. Accordingly, Plaintiff proposes a Subclass of:

All Class members whose accounts were assigned to Spring Oaks.

**Parties**

29.     Plaintiff is a natural person who is a resident and citizen of the State of Maryland, and who was a resident of the State of Maryland and within the state of Maryland at the time he entered into any agreement with Genesis. Plaintiff's loan application with Genesis originated in Maryland and Genesis received, through agreements with a third-party financial institution, the exclusive right to collect all payments of principal, interest and fees on his loan.

30.     Genesis is a privately-held subprime credit card loan originator and marketer. Genesis is a Delaware corporation with its principal place of business in Oregon. Genesis markets, underwrites, and collects credit card accounts in Maryland and elsewhere in the United States. Genesis does not and has never acted as a servicer with respect to the accounts of Plaintiff and Class Members.

31.     Spring Oaks is a debt buyer who is also a debt collector. Spring Oaks' principal business is to acquire defaulted consumer debt solely for collection purposes, and to then collect that debt. Spring Oaks is a limited liability company organized in Delaware, with its principal place of business in Virginia. Spring Oaks, a consumer debt buyer, is part of the consumer lending industry, and it regularly is engaged in the business of acquiring and investing in consumer loan accounts with Maryland residents. Indeed, within the last year, Spring Oaks has filed no fewer than 100 lawsuits against Maryland residents seeking to collect money on defaulted consumer loan accounts which Spring Oaks acquired and invested in. Spring Oaks' business of

7

acquiring and investing in consumer loans, and extending credit to Maryland consumers, is not an ancillary function of Spring Oaks but is its primary business purpose.

## Jurisdiction and Venue

32.     This Court has subject-matter jurisdiction over this case pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 1-501 and 4-402(e)(2).  This Court has personal jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. §§ 6-102 and 6-103(b), as Defendants transact business and perform work and services in the State of Maryland, contract to supply services in the State of Maryland, and regularly do and solicit business and engage in other persistent courses of conduct in the State of Maryland, including the business described in this Complaint.

33.     Venue is proper in this Court under Md. Code Ann., Cts. & Jud. Proc. §§ 4-402(e)(2) and 6-201, as the amount in controversy in this case exceeds $15,000.00 and because Defendants engage in a regular business and habitually engage in vocation in Montgomery County, Maryland. Among other things, Defendants direct their activity described in this Complaint to persons including residents of Montgomery County, Maryland, and contract to perform that business with respect to property located in Montgomery County, Maryland. Among other things, Defendants or their assignees have filed numerous lawsuits against Class Members in the District Court of Maryland for Montgomery County, Maryland, and have taken liens on the property of Class Members in Montgomery County, Maryland.

## Factual Allegations for Individual and Class Relief

### Genesis's Business

34.     Genesis marketed, originated, serviced, and collected on Plaintiff and Class members' credit card loan products, and extended credit to Plaintiff and Class members, all in exchange for compensation, but Genesis has no license to do so under Maryland law.

8

35.    Genesis provides and performs and represents that it can or will provide and perform the service of obtaining extensions of credit for consumers and providing advice or assistance to consumers with regard to obtaining extensions of credit for consumers.

36.    In particular, Genesis markets credit cards to consumers, encourages consumers to apply for the credit cards its markets, underwrites the loan applications for the credit cards, approves the loan applications, approves all extensions of credit using the credit card, and collects all payments on the loans.

37.    In exchange for a fee, Genesis advertises and markets credit cards which are issued in the name of a third-party bank, receives underwrites and processes applications for the credit cards, and arranges for the purchase of the credit card receivables.

38.    Genesis' solicitation, website applications, support services and assistance to consumers, and processing all zeroed in on obtaining a loan for a consumer. Genesis did not provide any other services to consumers aside from obtaining loans for them.

39.    Genesis' loan-arrangement services are not ancillary services, separate and distinct from the principal services they provide to consumers. Instead, loan-arrangement is the only service Genesis provides to consumers. Genesis is a loan broker and *de facto* lender; it is not a servicer.

40.    As Genesis advertises, "Genesis Financial Solutions is a national leader in non-Prime lending serving over 4 million customers through its Private Label and General Purpose credit card programs and working with 600 merchant partners across 16,500 locations. We provide essential financing solutions to the underserved consumer, whether our customers are looking to buy from one of our retail partners or fund everyday purchases. Our credit products

9

are fair, transparent and come with the tools and services designed to help our customers succeed."

41.     Genesis markets loans through advertisements and merchant "partners," solicited loan applications from consumers through a variety of means including its website and instructs various out-of-state banks to issue credit cards and accounts to consumers who Genesis identifies. These actions comprise the entirety of Genesis' business model.

42.     Genesis did not perform these loan arrangement services for free; it was amply compensated for its loan operation. In exchange for Genesis' role in assisting consumers to obtain loans, Genesis received, through contracts with the banks, the exclusive right to collect all payments of principal, interest and fees, including all fees on the loans. This arrangement, in essence, rendered Genesis the *de facto* lender.

43.     Genesis' reason for being is to profit by purportedly providing advice and assistance to consumers in obtaining loans from the banks it has partnered with so that it will receive, in reciprocation the legal right to receive payments from those consumers.

44.     Plaintiff and other Class members made direct payments to Genesis for assistance in obtaining an extension of credit.

45.     This arrangement proved to be a lucrative business for Genesis due to the high interest rates on the loans and the late fees it was entitled to charge.

46.     Genesis' own advertising confirms that it performs the service of obtaining extensions of credit for consumers and providing advice or assistance to consumers with regard to obtaining extensions of credit for consumers.

10

47.    In particular, Genesis advertises that it "deliver[s]financing solutions for merchants and consumers" and "provid[es] non-prime consumers a second chance to access quality financing solutions and direct-to-consumer credit cards."

48.    Its hedge-fund owner says that "Genesis Financial Solutions ("Genesis") is a leader in originating and managing non-prime consumer credit. Genesis partners with merchants, retailers and healthcare organizations who want to serve more customers by offering affordable and flexible financing. The Company's credit products are offered to consumers in-store or at the point-of-purchase on a private label basis."

49.    Genesis advertises that "[w]ith our help, non-prime consumers can buy quality products and services without depleting their savings account."

50.    Genesis touts its role as a lender. It advertises that as a "second chance" lender, its "seasoned analysts look at a myriad of variables beyond the credit score to provide afinancing solution that closely mirrors that of a primary lender." It advertises that "Genesis Credit, the nation's top provider of customized consumer financing solutions for near-prime borrowers, develops innovative programs to give applicants access to second chance financing after being turned down by a prime lender." It advertises that "Genesis Financial Solutions, Inc. is the leading provider of near-prime consumer financing through general purpose & private label credit card solutions. Their innovative card programs offer consumers turned down by a prime lender a second chance to access financing."

51.    Genesis uses its rent-a-bank scheme as a selling point. It advertises that it "partner[s] with the nation's leading merchants to create exceptional in-store and online financing programs to non-prime consumers through our Genesis Credit® solution and our bank partner relationships."

11

52. Genesis advertises that "Genesis specializes in 'second-look financing' for consumers who are turned down by a prime lender, yet are still valuable consumers who deserve access to financing. These 'near prime' consumers ask for a prime-like financing experience and Genesis provides a best-in-class service to meet this need."

53. Genesis advertises that "Today, Genesis Credit is the largest provider in the near-prime financial services space, having originated $6 Billion in assets to date and processing 12 Million applications annually. Our Private Label Credit Card (PLCC) business has achieved over $2.6 Billion in originations and has experienced over 40% growth since 2018."

54. Genesis advertises that it "allows merchants to provide financing solutions to customers who are turned down by primary lenders." It advertises that "we create near-prime financial products that are respectfully constructed, easy-to-use, and deliver lasting benefits for all." And, Genesis advertises that "Genesis approves more borrowers, offers higher credit lines and an appealing deferred interest promotion, and processes transactions quickly."

55. Genesis advertises that Genesis-branded credit cards "allow consumers to obtain a credit card for purchasing the everyday products and services they need, while demonstrating responsible use of credit."

56. Genesis advertises that its "proprietary underwriting processes evaluate customers on multiple criteria, in addition to the credit score."

57. Genesis is a small-loan lender. Credit limits on its accounts are all less than $25,000. Genesis targets subprime customers and engages in predatory lending designed to lure borrowers with low credit ratings to enter into illegal loan agreements with onerous terms.

58. Genesis's business operations described in this Complaint violate Maryland law. Genesis has an experienced compliance and legal department, which knows that Genesis's credit

business is in violation of Maryland law. Genesis has employed specific strategies to thwart enforcement of Maryland law on its operations, including the sham "rent-a-bank" scheme described in this Complaint which Genesis created and operates in order to provide Genesis with the pretense that a federally-insured bank or financial institution is involved in its lending operations and that Genesis can use the federally-insured institution to evade Maryland lending laws and profit from doing so.

### Genesis Advertises Its Credit Cards as Tools to Improve Credit Ratings

59.     Genesis targets its advertising to encourage consumer borrowers who are trying to rebuild their credit to obtain a Genesis credit card in order to improve their credit credit records, histories, and ratings.

60.     Genesis marketed its credit cards to Plaintiff and Class Members using a variety of means, including direct mail, e-mail, marketing through affiliates, and the Internet.

61.     For example. Genesis advertises that with its credit cards, "you can build credit while you go where you want, when you want."

62.     Genesis advertises that a Genesis credit card "is the partner you want on your journey toward building better credit. It's designed to help you move forward, even if you have a challenging credit history."

### Genesis Uses A Rent-A-Bank Scheme to Obtain Credit for Plaintiff and Class Members

63.     Genesis developed a credit origination engine that, for Genesis, ensures profits and eliminates risks. Drawing upon expertise in credit data analysis, mass marketing and debt collection, Genesis built a specialized business model which enables it to prosper by purportedly "serving" – but in fact victimizing – poor and disadvantaged consumers. Genesis's business is to extend small credit card loans with high fees and interest rates to borrowers with low credit

13

ratings by using third-party financial institutions, with the promise to the borrowers that these loans will improve the borrowers' credit ratings. In fact, Genesis's lending practices place these vulnerable consumers into more debt and aggravate the consumers' credit problems by increasing their indebtedness and imposing illegal lending terms.

64. In order to conceal the unlawful nature of extensions of credit, Genesis partnered with third-party financial institutions, which are in some cases exempt from many Maryland lending laws, as part of a "rent-a-bank" scheme.

65. To effectuate this scheme, Genesis agreed with the third-party financial institutions in agreements that Genesis would market credit cards to, and solicit credit card applications from, consumers like Plaintiff and Class Members.

66. Under the contracts between Genesis and its third-party financial institution partners, Genesis is the true lender in the transactions of Plaintiff and Class Members.

67. For example, Genesis agreed in advance with its third-party financial institution partners that Genesis would perform the marketing for the credit card accounts of Plaintiff and Class Members. Under Genesis's agreements with its third-party financial institution partners, Genesis marketed through various modes of marketing. Genesis prepared the product offerings and associated marketing materials, developed and placed electronic and print advertising, designed and developed websites, and delivered all notices and disclosures to Plaintiff and Class Members. Genesis alone was responsible for all costs and expenses associated with advertising and developing promotional materials in connection with the loans to Plaintiff and Class Members.

68. Genesis also agreed in advance with its third-party financial institution partners that Genesis would provide the analytics, software, and underwriting models to underwrite the

14

loans resulting from its marketing efforts, and that Genesis would perform the underwriting for the credit card accounts resulting from its marketing efforts. Genesis developed its own credit models for underwriting, based on data concerning prior Genesis customers. As part of Genesis's underwriting, it considered the risk of customers missing payments, the likelihood that a borrower would use a Genesis credit card for a cash advance instead of a purchase, the borrower's history with other Genesis credit cards, and other factors. Genesis underwrote the loans of Plaintiff and Class Members. Genesis alone was responsible for all costs and expenses associated with underwriting the loans to Plaintiff and Class Members.

69.    Genesis provided the loan application for Plaintiff and each Class Member. Genesis processed all loan applications from Plaintiff and each Class Member to determine whether the Plaintiff and each Class Member met eligibility criteria for the extension of credit, responded to all inquiries regarding the credit origination and application process, delivered all documents to Plaintiff and Class Members in the course of the credit origination and application process, and maintained all documents pertaining to the loans to Plaintiff and each Class Member.

70.    Genesis, in Plaintiff and each Class Member's transaction, also conducted credit risk assessment and loan underwriting.

71.    Genesis determined that Plaintiff and each Class Member satisfied the criteria required for an extension of credit and determined the amount of each extension of credit.

72.    Genesis evaluated and approved the credit application for Plaintiff and each Class Member.

73.    Genesis determined the amount of credit to be extended to Plaintiff and each Class Member.

74.     Genesis approved the extension of credit to Plaintiff and each Class Member.

75.     Genesis drafted and provided the credit account agreements for Plaintiff and each Class Member.

76.     Although Genesis is the true lender in the transactions of Plaintiff and Class Members, Genesis does not issue the credit card accounts it advertises. Instead, Genesis represented to Plaintiff and each Class Member that the credit account would be issued, and credit initially extended, by a third-party financial institution. Those accounts were issued under Genesis's oversight and Genesis's contracts with its third-party financial institution partners, at Genesis's request, in the amount requested by Genesis.

77.     Under Genesis's advance agreements with its third-party financial institution partners, Genesis promptly after account issuance arranged for the purchase of the right to fund the credit and collect all payments on the credit card accounts it arranged for Plaintiff and each Class Member.

78.     Genesis collected all payments on Plaintiff's and Class Members' accounts unless and until the accounts were charged-off and sold to one of Genesis's debt buyers. Genesis directed Plaintiff and each Class Member to make payments to Genesis, not Genesis's third-party financial institution partner.

79.     Genesis arranged with its third-party financial institution partners, in advance of originating the credit accounts for Plaintiff and Class Members, that Genesis would advertise and market for the credit accounts, that it would handle all of the work necessary to originate the credit accounts, and that it would be entitled to collect and receive all payments made on the credit accounts, despite the fact that the credit accounts were issued by Genesis's third-party financial institution partner.

16

80. Genesis managed all the operations relating to the submission of credit applications by Plaintiff and each Class Member and the extension of credit to Plaintiff and each Class Member, in exchange for a fee.

81. Genesis had agreed, in advance, to collect all payments, interest and fees due on the credit accounts of Plaintiff and each Class member.

82. Genesis, not its third-party financial institution partners, collected all sums – including fees – from Plaintiff and each Class Member. Genesis also charged interest to Plaintiff and each Class Member, and collected interest from Plaintiff and each Class Member

83. Genesis undertook to recover and collect the maximum payment of interest and principal possible from Plaintiff and Class Members, for its own benefit.

84. Plaintiff and Class Members made all payments on the credit accounts originated by Genesis to Genesis, unless and until their loans were "charged off" and sold at a discount to a debt-buyer debt collector.

85. The only contact Plaintiff and Class Members had with Genesis's third-party financial institution partners in connection with their credit accounts through Genesis was the partner's name on the credit agreement.

86. In exchange for Genesis's role in assisting Plaintiff and Class Members to obtain credit accounts, Genesis received, through its contracts with its third-party financial institution partners, the exclusive right to collect all payments of principal, interest and fees, from Plaintiff and each Class Member. This arrangement rendered Genesis the *de facto* lender; the true lender. Genesis's reason for existence was to profit by purportedly providing advice and assistance to consumers, including Plaintiff and Class Members, in obtaining loans nominally from a third-

party financial institution, so that Genesis would receive, in reciprocation, the legal right to receive payments from Plaintiff and Class Members.

87. This arrangement has been a lucrative business for Genesis.

88. Genesis provided Plaintiff and each Class Member with advice or assistance in the obtention of an extension of credit by others, and was compensated for doing so by collecting money including fees directly from Plaintiff and each Class Member.

89. Not only did Genesis broker the Plaintiff's and Class Members' extensions of credit without a license, Genesis *de facto* brokered the loans to itself, deceptively disguising the loans as legitimate loans.

90. Although the Plaintiff's and Class Members' loans were purportedly initially issued by its third-party financial institution partner, Genesis exerted control and ownership over those loans. Genesis carried out all interactions with the Plaintiff and each Class Member, accepted the ultimate credit risk, collected and pocketed the finance charges and fees, and owned and controlled the branding of the credit accounts, which were only available through Genesis. Genesis was in fact the primary lender, creditor and collector in connection with the loans that it made to Plaintiff and each Class Member.

91. Genesis had the predominant economic interest in the loans it provided to Plaintiff and Class Members.

92. Genesis formed its arrangement to have third-party financial institutions issue the credit cards it advertises and collects on as part of a specific effort to avoid state lending laws – including Maryland's lending laws.

93. At all material times, Genesis knew or acted with reckless disregard to the fact that it could not legally extend credit, because, as Genesis knows and always knew, the terms of the

18

credit card loans it markets, underwrites, funds and services are in violation of the laws of many states – including Maryland's.

### *Genesis Does Not Have Any License to Conduct Its Business in Maryland*

94.     Genesis does not have any license to conduct its credit services and lending business in Maryland and has never had any license to conduct its credit services and lending business (or any business) in Maryland.

95.     However, Maryland law requires Genesis to be licensed by the Commissioner of Financial Regulation to conduct its credit services and lending business in Maryland. For example, both the MCSBA and the MCLL require Genesis to have licenses that it does not have and has never had.

### *Genesis Violated the MCSBA in Class Member Transactions*

96.     Genesis is a "credit services business" under the MCSBA § 14-1901(e)(1)(ii). Genesis, with respect to the extension of credit by third-party financial institutions, sold, provided, performed, or represented that it could or would sell, provide, or perform, the following services in return for the payment of money or other valuable consideration: (i) improving a consumer's credit record, history, or rating or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving the consumer's credit record, history, or rating or establishing a new credit file or record; and (ii) obtaining an extension of credit for a consumer, or providing advice or assistance to a consumer with regard to obtaining an extension of credit for the consumer. Genesis's advertising about its credit improvement and assistance services are detailed in this Complaint, as are Genesis's acts in obtaining extensions of credit for consumers from, or purportedly from, third-party financial institutions.

97.    Genesis violated numerous mandates of the MCSBA in its dealings with Plaintiff and Class Members.

98.    Genesis received money or other valuable consideration from Plaintiff and Class Members when it had not secured a license from the Maryland Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article, in violation of the MCSBA § 14-1902(1).

99.    Genesis received money and valuable consideration solely for the referral of Plaintiff and Class Members to a credit grantor when the credit extended to the Plaintiff and Class Members was substantially on the same terms as those available to the general public, in violation of MCSBA §14-1902(2).

100.    Genesis never provided to Plaintiff or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Plaintiff or any Class Member the "NOTICE OF CANCELLATION" required under that section.

101.    Moreover, Genesis was not licensed as required by the MCSBA. Accordingly, it was prohibited from receiving any money or valuable consideration from Plaintiff or any Class Member under the MCSBA §14-1902(1).

102.    Furthermore, Genesis's purported contracts for services with Plaintiff and each Class Member did not comply with the MCSBA. Accordingly, the purported contracts were void and unenforceable under the MCSBA § 14-1907(b), and Genesis was never entitled to enforce any terms of any of those purported contracts or collect any money from Plaintiff or any Class Member in connection with those purported contracts.

103.    A credit services business license is subject to the licensing and investigatory provisions of the Maryland Installment Loans – Licensing Provisions, Md. Code Ann., Fin. Inst.

20

§§ 11-301 *et seq.*, which require a license before Genesis could make any loans to Plaintiff or Class Members. Genesis's lack of the required license means the loans to Plaintiff and Class Members are unenforceable.

104.    In addition, a credit services business license is subject to the provisions of the Maryland Consumer Loans – Licensing Provisions, Md. Code Ann., Fin. Inst. §§ 11-201 *et seq.* For that reason, as well, Genesis' loans to Plaintiff and Class Members were unenforceable and Genesis was never entitled to collect any money from Plaintiff or Class Members.

### *Genesis Violated the MCLL in Class Member Transactions*

105.    Each Class Member transaction involved a loan or advance of money or credit of less than $25,000.00, subject to the MCLL.

106.    Genesis made a loan to Plaintiff and each Class Member. Genesis did not perform its services in arranging loans with third-party financial institutions for free; it was amply compensated for its loan operation. In exchange for Genesis's role in assisting Plaintiff and Class Members to obtain loans, Genesis received, through contracts with the third-party financial institutions, the exclusive right to collect all payments of principal, interest and fees, including fees charged for preparing and processing the loans. Indeed, Genesis purchased the right from the third-party financial institutions to enforce the terms of the loans to Plaintiff and Class Members, and to collect the payments that were to be made by Plaintiff and Class Members under the terms of the loan, including all interest, penalties, and fees. Indeed, if Plaintiff or Class Members mistakenly sent a loan payment to the third-party financial institution, rather than to Genesis, the third-party financial institution was, pursuant to its contract with Genesis, obligated to forward that payment to Genesis.

21

107. The third-party financial institutions never received any payments from Plaintiff or Class Members, Genesis did. Genesis's *raison d'etre* was to profit by purportedly providing advice and assistance to consumers in obtaining loans from the third-party financial institutions it had partnered with so that it would receive, in reciprocation, the legal right to receive payments from consumers like Plaintiff and Class Members. Plaintiff and Class Members made direct payments on their loan accounts to Genesis. Genesis deducted amounts from Plaintiff and Class Members' loans as "fees" which were to pay for the preparation and processing of their loans.

108. Plaintiff and Class Members made numerous payments to Genesis, including interest, costs, fees and other charges. Genesis received and retained Plaintiff and Class Members' payments.

109. Genesis is in the business of making loans of less than $25,000.00. In fact, all of its loans to Plaintiff and Class Members are for less than $6,000.00. Genesis makes numerous such loans to Marylanders each year.

110. Genesis does not have a license under the MCLL, as required under MCLL § 12-302.

111. None of the loans of Plaintiff or Class Members contain a written election to be governed by Subtitle 1, Subtitle 4, Subtitle 9, or Subtitle 10 of the Maryland Commercial Law Article.

112. Genesis was not permitted to make its loans to Plaintiff or Class Members because it is not, and never has been, licensed under or exempt from the licensing requirements under the MCLL.

22

113.    Genesis's loans to Plaintiff and each Class Member are void and unenforceable because Genesis made the loans without a license under the MCLL, when Genesis is not exempt from the licensing requirements of the MCLL.

114.    Genesis has unlawfully received and retained, and continues to receive and retain, principal, interest, fees, and other compensation with respect to its loans to Plaintiff and Class Members, which are void and unenforceable under the MCLL.

115.    Genesis is not, and has never been, licensed as required by Maryland law, the statutes requiring Genesis to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and Genesis's actions described in this Complaint violate the fundamental public policy of Maryland.

116.    Genesis never had any right to collect money from Plaintiff or Class Members, as a result of Genesis's illegal, unlicensed activity.

### *Plaintiff's Experiences*

117.    Plaintiff, Mr. Ford, received a loan from Genesis in the amount of less than $6,000.00, for consumer, family and household purposes, when Genesis did not have a license to make such a loan under Maryland law and when Genesis was not exempt from the licensing requirements of Maryland law.

118.    Mr. Ford obtained the credit card loan from Genesis in Maryland in response to Genesis's marketing efforts. Genesis took Mr.Ford's loan application, underwrote it, decided to extend credit to him, and arranged for a credit card to be sent to him. Genesis brokered Mr. Ford's loan, and acted as the de facto lender in his transaction. Although the loan was "issued" by a third-party bank, Genesis marketed for the loan and did everything necessary to obtain the loan for Mr. Ford.

23

119. Mr. Ford accepted and used the credit card in Maryland, and made payments on the credit card in Maryland.

120. Mr. Ford's credit card was issued by one of Genesis's third-party financial institution partners, but Genesis collected all amounts under Mr. Ford's account.

121. Genesis deducted amounts from Mr. Ford's loan as "fees," by charging them to his account, and demanding that he pay those fees. Mr. Ford paid Genesis' fees, and Genesis kept the payments.

122. Mr. Ford made numerous payments which Genesis collected, including interest, costs, fees and other charges. Mr. Ford never made any payment on the account to the third-party bank that issued the loan.

123. Genesis deducted amounts from Mr. Ford's loan as "fees" which were to pay for the preparation and processing of his loan.

124. Mr. Ford made numerous payments to Genesis, including interest, costs, fees and other charges. Genesis received and retained his payments. Mr. Ford never made any payment on the account to the third-party financial institution that issued the loan.

125. In 2021, all right, title and interest in Mr. Ford's loan account and Cardholder Agreement was sold to Spring Oaks for a substantial discount on what Genesis claimed was owed by Mr. Ford on the account.

126. On December 23, 2022, Spring Oaks sued Mr. Ford in Maryland state District Court to collect the full purported account balance on his Genesis-originated account.

127. On March 2, 2023 Spring Oaks obtained a judgment against Mr. Ford in state District Court to collect the full purported account balance on his Genesis-originated account.

24

128. However, Spring Oaks had not served Mr. Ford. Accordingly, Mr. Ford filed a motion to vacate the judgment Spring Oaks obtained against him concerning his Genesis-originated account. The District Court vacated the judgment against Mr. Ford on June 16, 2023, and Mr. Ford's claims in this Complaint also constitute defenses to Spring Oaks' claim against him.

### *Class Action Allegations*

129. The Class, as defined above, is identifiable. The Plaintiff is a member of the Class. The Class is so numerous that joinder of all members is impracticable.

130. There are questions of law and fact which are not only common to the members of the Class but which predominate over any questions affecting only individual Class members. The common and predominating questions include, but are not limited to:

> A. Whether Genesis acted as a credit services business under the MCSBA in Class Members' transactions;
>
> B. Whether Genesis failed to make any of the disclosures required by the MCSBA § 14-1906;
>
> C. Whether Genesis was required to be licensed with the Maryland Commissioner of Financial Regulation before engaging in transactions with Plaintiff and Class Members;
>
> D. Whether Genesis's transactions with each Class Member are contrary to the public policy of Maryland;
>
> E. Whether the statutes requiring Genesis to be licensed are regulatory in nature for the protection of the public, rather than

25

merely to raise revenue, and enforcing Class Members' Genesis loan accounts is against public policy;

F.    Whether Genesis ever had any right to receive or retain any payments on Class Members' loans;

G.    Whether each Class Member is entitled to a declaration under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. §§ 3-401 *et seq.* that their loan account is void and unenforceable;

H.    Whether Plaintiff and Subclass Members' loans obtained by Spring Oaks are void, unenforceable, and uncollectible; and,

I.    Whether each Class Member is entitled to recover all payments made on their loans under the MCLL.

131.    Plaintiff's claims are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(b)(3) and are based on and arise out of similar facts constituting the wrongful conduct of Defendants.

132.    Plaintiff will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(b)(4). Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

133.    Neither Plaintiff nor Plaintiff's counsel has any interests which might cause them not to vigorously pursue this claim.

134.    The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of Md. Rule 2-231(c)(1)(A).

135.    Defendants' actions are generally applicable to the respective Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class within the meaning of Md. Rule 2-231(c)(2).

136.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

137.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

138.    Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

### Causes of Action

**COUNT I.        Declaratory Relief under Md. Cts. & Jud. Pro. § 3-406**

139.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

140.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations of the Plaintiff and Class Members with Defendants, under the consumer protections embodied in Maryland law.

27

141. Defendants maintain that they Genesis was not required to have a license from the Maryland Commissioner of Financial Regulation to engage in its transactions with Plaintiff and Class Members.

142. Plaintiff maintains that Genesis was required to have a license from the Maryland Commissioner of Financial Regulation to engage in the transactions with Plaintiff and Class Members.

143. Defendants maintain that Genesis did not violate the MCSBA or the MCLL in the transactions of Plaintiff and Class Members.

144. Plaintiff maintains that Genesis violated the MCSBA and the MCLL in its transactions and the transactions of Plaintiff and Class Members.

145. Plaintiff maintains that any purported contract between him and Genesis, and between any Class Member and Genesis, is void *ab initio* and unenforceable as contrary to the public policy of Maryland, under the MCSBA.

146. Defendants maintain that purported contracts between Plaintiff and Genesis, and between other Class Members and Genesis, are not void *ab initio* and unenforceable as contrary to the public policy of Maryland under the MCSBA.

147. Defendants maintain that they and their assignees may assess and collect charges from Plaintiff and Class Members.

148. Plaintiff maintains that he and Subclass members are entitled to a declaration of their rights under the MCSBA and the MCLL, and under the loan account contracts Genesis assigned to Spring Oaks. Plaintiff maintains that he is entitled to a declaration that his loan account, and the loan accounts of Subclass members, are void, unenforceable, and uncollectible.

28

149.    Defendants maintain that the loan accounts of Subclass members are not void, unenforceable, and uncollectible.

150.    Plaintiff maintains that Defendants do not have, and never had, the right to assess or collect charges from him, or from Class Members, and that the Defendants never had the right to assign any such rights to anyone else, due to the facts alleged in this Complaint.

151.    Plaintiff and Class Members have received or will receive collection notices from Defendants or their assignees demanding payment of the alleged amounts due and have been sued or will be sued for collection of the sums which Defendants or their assignees claim are due. Moreover, Defendants notify credit reporting agencies of the alleged balances due, thereby damaging the credit scores and history of Plaintiff and Class Members.

152.    These practices continue and will continue unless and until this Court declares and affirms that Defendants do not have, and never had, the right to receive or retain money from Plaintiff and Class Members on their loan accounts.

153..    This presents an actual, justiciable controversy between the parties relating to the construction of the purported contracts of Plaintiff and Class Members and the application of the law to those purported contracts. Defendants have sought and will continue to seek to collect amounts from Plaintiff and Class Members when they are not legally entitled to do so. Defendants continue to harm Plaintiff and Class Members by doing so.

154.    Plaintiff and Class Members have a right to be free from the attempts of Defendants to collect amounts from them to which Defendants have no right.

**COUNT II.     Violation of the MCLL**

155.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

156.    Each of the loans to Plaintiff and Class Members which are the subject of this Complaint were for less than $25,000, are extensions of credit or loans subject to the MCLL and are "loans" under the MCLL.

157.    Genesis made the loans to Plaintiff and Class Members which are the subject of this Complaint, and thus is a "lender" under the MCLL.

158.    None of the loans to Plaintiff or Class Members elect to be governed by Subtitle 1, Subtitle 4, Subtitle 9, or Subtitle 10 of Title 12 of the Maryland Commercial Law Article.

159.    Genesis made loans to Plaintiff and Class Members of less than $25,000 when Genesis was required to be licensed under MCLL § 12-302, but Genesis was not and never has been licensed under or exempt from the licensing requirements of the MCLL.

160.    The loans to Plaintiff and Class Members are and always were void and unenforceable under the MCLL.

161.    Genesis and Spring Oaks are not and were never entitled to receive or retain any principal, interest, fees, or other compensation with respect to any loan to Plaintiff or Class Members, under MCLL § 12-314.

162.    In violation of the MCLL, Genesis, with respect to the Plaintiff's and Class Members' loans that are and always were void and unenforceable, collected and attempted to collect, directly or indirectly, amounts from Plaintiffs and Class Members, and sold, assigned, or otherwise transferred loans of Plaintiff and Class Members to other persons.

**COUNT III.    Violation of the MCSBA**

163.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

30

164.    Genesis is a "credit services businesses" as defined in the MCSBA § 14-1901(e)(1). Among other things, at all times relevant to this Complaint, and as described in this Complaint, Genesis, with respect to the extension of credit by others, sold, provided, or performed, or represented that it could or would sell, provide, or perform, services in return for the payment of money or other valuable consideration, including improving Plaintiff's and Class Members' credit records, histories, or ratings, or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving Plaintiff's and Class Members' credit records, histories, or ratings or establishing a new credit files or record, and obtaining an extension of credit for Plaintiff and Class Members, and providing advice or assistance to Plaintiff and Class Members with regard to obtaining an extension of credit for the Plaintiff and Class Members.

165.    At no time relevant to the actions alleged in this Complaint was Genesis licensed by the Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article of the Maryland Annotated Code.

166.    Genesis received money or other valuable consideration from Plaintiff and Class members when it had not secured a license from the Maryland Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article, in violation of the MCSBA § 14-1902(1).

167.    Genesis received money and valuable consideration solely for the referral of Plaintiff and Class members to a credit grantor when the credit extended to the Plaintiff and Class Members was substantially on the same terms as those available to the general public, in violation of MCSBA §14-1902(2).

31

168.    Genesis never provided to Class Representatives or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Class Representatives or any Class Member the "NOTICE OF CANCELLATION" required under that section.

169.    Genesis materially and willfully misrepresented to Class Representative and each Class Member that they had no right to cancel their loans without obligation after the loans were made, when the MCSBA affirmatively required Genesis to disclose to Class Representative and each Class member that they could, in fact, do so. That misrepresented information is required to be disclosed by the MCSBA. That information is also material to establishing Genesis' liability under the MCSBA. Genesis' false statement that the Class Members' loans could not be cancelled without obligation was a trick and contrivance intended to prevent Class Members from knowing or exercising their rights. By representing that loans could not be cancelled without obligation, and by failing to disclose the notice of cancellation which the MCSBA required Genesis to disclose to Class Representatives and each Class Member, Prosper concealed Class Members' rights to cancel their loans without obligation and concealed Genesis' violations of the MCSBA. Genesis' misrepresentation of Class Members' rights and concealment of its violations of the MCSBA was, at least, in reckless disregard of its obligations under the law. Genesis intentionally represented that Class Members' loans could not be cancelled without obligation, when they could; it intentionally did not provide legally required cancellation notices, and it concealed its wrongdoing and Class Representative's and Class Members' rights. Class Representatives and Class Members did not discover these misrepresentations and concealments until, at least, 2023.

170.    Genesis's actions in violation of the MCSBA caused actual damages to Plaintiff and each Class Member, including in the amount of prohibited charges and sums which Genesis

was not legally permitted to assess, collect, or retain, but which Genesis nevertheless did assess, collect, and retain from Plaintiff and Class Members.

WHEREFORE, Plaintiff demands declaratory judgment and judgment in an aggregated amount for the Class as a whole in excess of $75,000.00, as follows:

A.   A declaratory judgment establishing that Genesis was required to be licensed by the Commissioner of Financial Regulation to undertake the actions alleged in this Complaint;

B.   A declaratory judgment establishing that Genesis never had any right to collect any money from Plaintiff or Class Members, and that Plaintiff and Class Members' loans and agreements with Defendants are, and always were, void and unenforceable;

C.   A declaratory judgment establishing that Spring Oaks Capital never had any right to collect any money from Plaintiff or Subclass Members as Genesis' assignee;

D.   Payment to Plaintiff and Class Members of the statutory damages imposed under MCLL § 12-314, including a return to Plaintiff and Class Members of principal, interest, and other compensation received by Defendants on their accounts;

E.   Compensatory damages in an amount determined by a jury;

F.   Pre-judgment and post-judgment interest at the legal rate on all sums awarded to Plaintiff and Class Members; and,

G.   Such other and further relief as the nature of this case may require.

Respectfully submitted,

Benjamin H. Carney (CPF No. 0412140132)
bcarney@GWCfirm.com
Richard S. Gordon (CPF No. 8912180227)
rgordon@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
11350 McCormick Road, Executive Plaza 1
Suite 1000, Hunt Valley, Maryland 21031
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

Attorneys for Plaintiff and the Class

## JURY TRIAL

Plaintiff demands a trial by jury on all issues triable of right by a jury.

Benjamin H. Carney